1

2

3

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

4

* * *

5

6      Sydney Ellerbe
       *doing business as*
7      Wall Street World Inc.,

Case No. 2:24-cv-00555-JAD-DJA

**Order**

8                        Plaintiff,

9              v.

10     Becca's Restaurant & Sports Lounge
       *doing business as*
11     Scotty's Restaurant & Lounge,

12                       Defendant.

13

14          *Pro se* Plaintiff Sydney Ellerbe dba Wall Street World Inc.[1] submitted initiating

15     documents to the Court which include an application to proceed *in forma pauperis* and a

16

17

18     [1] It is unclear if Plaintiff is bringing his claims on behalf of himself and Wall Street World Inc., or
       just on his own behalf.  Because non-lawyers cannot generally represent companies *pro se*, and
19     because Plaintiff does not inform the Court about whether Wall Street World fits an exception to
       this general rule, the Court construes Plaintiff as bringing his claims on his own behalf.  If
20     Plaintiff wishes to bring his claims on behalf of Wall Street World, he must explain whether the
       company is a corporation, unincorporated association, sole proprietorship, or some other entity.
21     This is because while parties may represent themselves, corporations, partnerships, and
       associations must appear in federal court through an attorney.  *See Rowland v. Cal. Men's
22     Colony*, 506 U.S. 194, 202 (1993) (citations omitted) ("courts have uniformly held that 28 U.S.C.
       § 1654, providing that 'parties may plead and conduct their own cases personally or by counsel,'
23     does not allow corporations, partnerships, or associations to appear in federal court otherwise than
       through a licensed attorney.").  So, Wall Street World Inc. must retain counsel to proceed in this
24     action if it is a corporation.  *See Reading Intern., Inc. v. Malulani Group, Ltd*., 814 F.3d 1046,
       1053 (9th Cir. 2016) (explaining that corporations must be represented by counsel).  On the other
25     hand, if Wall Street World is a sole proprietorship, Plaintiff may be able to litigate its claims.  *See
       Pullos v. All. Laundry Sys., LLC*, No. 3:07-cv-00169-LRH-RAM, 2009 WL 10708625, at *1 (D.
26     Nev. July 29, 2009), *aff'd*, 424 F. App'x 663 (9th Cir. 2011) (stating that "numerous courts have
       recognized that because a sole proprietorship has no separate legal existence apart from the sole
27     proprietor, a sole proprietor may litigate claims on behalf of his or her company *pro se*.").

28

1    complaint. (ECF Nos. 1-1, 4). Because Plaintiff's application is complete, the Court grants it and

2    screens Plaintiff's complaint. However, because the Court finds that Plaintiff's complaint does

3    not state a claim upon which relief can be granted, it dismisses his complaint with leave to amend.

4    ## I.    *In forma pauperis* **application.**

5        Plaintiff filed the forms required to proceed *in forma pauperis* (without paying the filing

6    fee). (ECF No. 4). Plaintiff has shown an inability to prepay fees and costs or give security for

7    them. Accordingly, the application to proceed *in forma pauperis* will be granted under 28 U.S.C.

8    § 1915(a). The Court will now screen Plaintiff's complaint.

9    ## II.    **Legal standard for screening.**

10       Upon granting an application to proceed *in forma pauperis*, courts additionally screen the

11   complaint under § 1915(e). Federal courts are given the authority to dismiss a case if the action is

12   legally "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks

13   monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2).

14   When a court dismisses a complaint under § 1915, the plaintiff should be given leave to amend

15   the complaint with directions as to curing its deficiencies, unless it is clear from the face of the

16   complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70

17   F.3d 1103, 1106 (9th Cir. 1995).

18       Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a

19   complaint for failure to state a claim upon which relief can be granted. Review under Rule

20   12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d

21   719, 723 (9th Cir. 2000). A properly pled complaint must provide a short and plain statement of

22   the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp.*

23   *v. Twombly*, 550 U.S. 544, 555 (2007). Although Rule 8 does not require detailed factual

24   allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the

25   elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Papasan v.*

26   *Allain*, 478 U.S. 265, 286 (1986)). The court must accept as true all well-pled factual allegations

27   contained in the complaint, but the same requirement does not apply to legal conclusions. *Iqbal*,

28   556 U.S. at 679. Mere recitals of the elements of a cause of action, supported only by conclusory

1   allegations, do not suffice.  *Id.* at 678.  Where the claims in the complaint have not crossed the

2   line from conceivable to plausible, the complaint should be dismissed.  *Twombly*, 550 U.S. at 570.

3   Allegations of a *pro se* complaint are held to less stringent standards than formal pleadings

4   drafted by lawyers.  *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (finding that liberal

5   construction of *pro se* pleadings is required after *Twombly* and *Iqbal*).

6   **III.    Screening Plaintiff's complaint.**

7          Plaintiff sues Defendant Becca's Restaurant & Lounge dba Scotty's Restaurant & Lounge

8   ("Becca's") for damages and injunctive relief, alleging two causes of action: (1) a claim for

9   public accommodation discrimination under Title II of the Civil rights Act of 1964, 42 U.S.C.

10  § 2000a ("Title II"); and (2) a state law claim for defamation *per se*.[2]  Plaintiff's claims arise out

11  of his eviction from his home in the Tuscan Highland Apartments[3] following two instances in

12  which Becca's—a private restaurant located within the Tuscan community—removed him from

13  the premises in racially motivated incidents.  Plaintiff asserts that Tuscan evicted him—citing a

14  false reason—to cover up the racially motivated events.

15         Plaintiff—an African American man—alleges that a Becca's employee removed him on

16  two separate instances while Plaintiff was dining.  During the first incident, Plaintiff claims that

17  Becca's employee asked him to leave because a white female patron was jealous of Plaintiff

18  dining with another woman.  During the second incident, Becca's employee removed Plaintiff

19

20  [2] Plaintiff asserts that his complaint is "for racial discrimination & defamation of character."
    (ECF No. 1-1 at 1).  The Court liberally construes Plaintiff's complaint as alleging a claim for
21  defamation *per se* under Nevada law and a claim for public accommodation discrimination under
    Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a.
22

23  [3] Plaintiff filed a separate lawsuit against Tuscan alleging the same facts but does not name
    Tuscan as a defendant here.  *See Ellerbe v. Tuscan Highlands Apartments*, No. 2:24-cv-00554-
24  APG-DJA (D. Nev.).  Becca's is a private restaurant located within the property with which
    Plaintiff alleges Tuscan contracts for catering and resident events.  (ECF No. 1-3 Ex. A).  Plaintiff
25  asserts that tenants' rent payments to Tuscan include a monthly lifestyle fee for Becca's.  (ECF
    No. 1-1).  Plaintiff also alleges that Tuscan and Becca's are owned by the same entity—Schulman
26  Properties—and includes an attachment purporting to show that ownership.  (ECF No. 1-3 at 18).
    However, given the fact that Plaintiff has sued Becca's and Tuscan separately and only briefly
27  raises the issue of their alleged joint ownership, the Court does not construe Becca's and Tuscan
    to be the same entity.
28

from the restaurant following an altercation in which another white patron threatened Plaintiff and made racist remarks. Plaintiff asserts that, despite him not being the aggressor in either incident, he was the person removed from the premises.

Plaintiff argues that these racial incidents are the true cause of his subsequent eviction from Tuscan's property. Three days after the second incident, Tuscan's office manager served Plaintiff with a three-day notice to quit for nuisance based on an allegation from another community member—Josh[4]—that Plaintiff had assaulted him. Plaintiff asserts that Josh's allegation was false, and that Tuscan should have known it was false, but instead Tuscan used the allegation as an excuse to evict him to cover up the racial incidents that occurred at Becca's. Plaintiff asserts that Josh provided no evidence of the assault, never called the police, never received medical attention, never filed charges, and had a known history of mental health problems that made him an unreliable source. Worse, Plaintiff later witnessed another community member being arrested for domestic violence, but when Plaintiff asked the Tuscan leasing manager if that community member would be evicted, the manager said, "[t]hat's a criminal offense, and has nothing to do with Tuscan Highland's Apartments." (ECF No. 1-1 at 4). Plaintiff also compares Tuscan's quick and extreme response to Josh's unsupported allegations with Tuscan's slow or nonexistent response to his complaints—the latter of which was supported by witnesses—about Becca's choice to remove him from the restaurant. Finally, Plaintiff alleges that, after the racial incidents, Tuscan raised his rent and attempted to collect a past due balance despite Tuscan and Plaintiff's former agreement that Plaintiff would pay a lower rate if he paid in advance. Plaintiff asserts that his eviction has resulted in him losing business clients because many of his clients were also Tuscan residents and heard that Plaintiff was evicted for an alleged assault.

### A.    *Violation of Title II.*

Plaintiff has not shown that he has notified the Nevada Equal Rights Commission ("NERC") prior to bringing his complaint in federal court. So, even though Plaintiff alleges a

---

[4] Plaintiff does not provide a last name for this individual or name this individual as a defendant.

colorable claim for discrimination under Title II, he has not shown that he is properly in federal court.  The Court thus dismisses Plaintiff's Title II claim without prejudice and with leave to amend.

Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a(a) provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a) applies to "[e]stablishments affecting interstate commerce," including "any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises..."  42 U.S.C. § 2000a(b).  "To state an actionable discrimination claim under [42 U.S.C. § 2000a], a plaintiff must allege that he or she: (1) is a member of a protected class; (2) attempted to exercise the right to full benefits and enjoyment of a place of public accommodations; (3) was denied those benefits and enjoyment; and (4) was treated less favorably than similarly situated persons who are not members of the protected class."  *Dunn v. Albertsons*, No. 2:16-cv-02194-GMN-PAL, 2017 WL 3470573, at *3 (D. Nev. Aug. 10, 2017) (*citing United States v. Lansdowne Swim Club*, 894 F.2d 83, 88 (3d Cir. 1990)).

"However, there are also certain jurisdictional prerequisites to bringing a claim under Title II."  *May v. California Hotel and Casino, Inc.*, No. 2:13-cv-00066-GMN-PAL, 2014 WL 1494231, at *3 (D. Nev. Apr. 14, 2014).  Specifically, 42 U.S.C. § 2000a–3(c) provides "no civil action may be brought [for an alleged Title II violation] before the expiration of thirty days after written notice of such alleged act has been given to the appropriate State or local authority by registered mail or in person."  In other words, "where the state in which the alleged Title II violation occurred has established an agency with authority to hear Title II complaints, the plaintiff must give notice of the Title II violation to the agency before filing a Title II claim in federal court."  *Hubbard v. Ceasars Ent. Corp.*, No. 2:21-cv-01003-APG-NJK, 2021 WL 2169932, at *1 (D. Nev. May 26, 2021).  "But the district court's jurisdiction doesn't depend on whether the aggrieved party exhausted administrative remedies—only whether notice was given

1  to the appropriate administrative entity.  Nevertheless, [plaintiffs are] required to notify the

2  Nevada state agency that was created to protect civil rights: NERC."  *Henderson v. Aria Resort &*

3  *Casino Holdings, LLC*, No. 2:21-cv-0280-JAD-NJK, 2022 WL 1785433, at *4 (D. Nev. May 31,

4  2022).  "[The] NERC was created with the authority to investigate and conduct hearings

5  regarding 'tensions, practices of discrimination and acts of prejudice' against any protected

6  person or group."  *Dunn*, 2017 WL 3470573, at *4 (citing NRS 233.150(a)).  "Chapter 651 of

7  the Nevada Revised Statutes prohibits discriminatory practices in places of public

8  accommodation on account of race and provides that any person who believes that he or she has

9  been denied full and equal enjoyment of the goods or services of a place of public

10  accommodation 'may file a complaint to that effect with the Nevada Equal Rights Commission.'"

11  *May*, 2014 WL 1494231, at *4 (quoting Nev. Rev. Stat. §§ 651.070, 651.110).

12       Here, Plaintiff brings a colorable a claim for public accommodation discrimination but

13  fails to show that he notified the NERC before filing this complaint.  Plaintiff states in his

14  complaint that Becca's is a restaurant, which meets the statutory definition for "places of public

15  accommodation."  Plaintiff alleges that he was discriminated against as an African American

16  man, which is a protected class for purposes of 42 U.S.C. § 2000a.  Plaintiff cites two separate

17  incidents where Becca's manger asked him to leave the establishment while Plaintiff was

18  enjoying dinner.  Plaintiff claims that during the first incident Becca's manager removed him

19  from the bar while he was eating dinner with a female companion because another dining

20  patron—a white female—was jealous.  Plaintiff claims that during the second incident, Becca's

21  manager removed Plaintiff again following an altercation in which a white dining patron

22  aggressively walked toward Plaintiff, made racist remarks, and threatened him.  Despite not being

23  the aggressor or instigator in these situations, Plaintiff alleges that he was the person Becca's

24  removed.  Thus, the Court finds that Plaintiff states a colorable claim for public accommodation

25  discrimination.

26       However, it is unclear whether Plaintiff took the appropriate administrative steps before

27  bringing a public accommodation discrimination claim pursuant to 42 U.S.C. § 2000a.  In order to

28  proceed with a Title II claim, Plaintiff is required to notify the state agency that was created to

1    protect civil rights, which is the NERC.  Plaintiff fails to allege that he filed a Title II complaint

2    with the NERC, and he therefore has not met the notice requirement.  As a result, Plaintiff fails to

3    establish this Court's subject matter jurisdiction over the instant claim and the Court must dismiss

4    Plaintiff's Title II claim with leave to amend for lack of jurisdiction.

5              **B.    *Defamation per se.***

6           The Court liberally construes Plaintiff's defamation claim as one for defamation *per se*

7    because Plaintiff alleges that the defamatory statement implied that he had committed a crime.

8    Plaintiff fails to allege a colorable claim for defamation *per se* because he alleges that Tuscan—

9    not Becca's— made a defamatory statement that Plaintiff assaulted another tenant.  The Court

10   thus dismisses Plaintiff's defamation *per se* claim without prejudice and with leave to amend.

11          Defamation encompasses both slander (spoken) and libel (written) defamatory statements.

12   *Flowers v. Carville*, 292 F.Supp.2d 1225, 1232 n.1 (D. Nev. 2003).  To state a claim for

13   defamation, Plaintiff must allege the following elements: "(1) a false and defamatory statement

14   by [a] defendant concerning the plaintiff; (2) an unprivileged publication a third person; (3) fault,

15   amounting to at least negligence; and (4) actual or presumed damages."  *Rosen v. Tarkanian*, 453

16   P.3d 1220, 1225 (Nev. 2019); *see also* Nev. Rev. Stat. § 200.510(1) (defining libel).  Whether a

17   statement is capable of a defamatory construction is a question of law for the court to decide.

18   *Branda v. Sanford*, 97 Nev. 643, 646 (1981).  "A statement is defamatory when, '[u]nder any

19   reasonable definition[,] such charges would tend to lower the subject in the estimation of the

20   community and to excite derogatory opinions against him and to hold him up to

21   contempt.'"  *Posadas v. City of Reno*, 109 Nev. 448, 453 (1993) (*quoting Las Vegas Sun v.

22   Franklin*, 74 Nev. 282, 287 (1958)).  "In determining whether a statement is actionable for the

23   purposes of a defamation suit, the court must ask whether a reasonable person would be likely to

24   understand the remark as an expression of the source's opinion or as a statement of existing

25   fact."  *Pegasus v. Reno Newspapers, Inc.*, 118 Nev. 706, 715 (2002) (internal citations omitted).

26           Some classes of defamatory statements—known as "defamation *per se*"—are considered

27   so likely to cause serious injury to reputation and pecuniary loss that these statements are

28   actionable without proof of damages.  *K-Mart Corp. v. Washington*, 866 P.2d 274, 284 (Nev.

1993) (overruled in part on other grounds). A statement is considered defamation per se, "i.e., actionable without a showing of such special damages only if it falls into one of usually four categories: (1) imputations that plaintiff has committed a crime; (2) imputations that would injure plaintiff's trade, business or office; (3) imputations that the plaintiff has contracted a loathsome disease; and… (4) imputations of unchastity in a woman." *Branda*, 97 Nev. at 646.

Here, Plaintiff fails to plead a defamation *per se* claim for two reasons. Plaintiff does not meet all the requisite elements for defamation *per se* and the facts serving as the basis for his claim refer to actions taken by Tuscan, not Becca's. To prevail on a defamation *per se* claim, Plaintiff must allege that Becca's made a defamatory and false statement. But Plaintiff's complaint contains no allegations that Becca's made any statements, defamatory or otherwise, following the racial incidents at Becca's restaurant. Instead, the crux of Plaintiff's defamation claim rests on false statements that *Tuscan*—a separate entity from Becca's—made about him.[5] Plaintiff claims that Tuscan made false statements about him assaulting another tenant to justify evicting him and that Tuscan did this to destroy his character. But Plaintiff does not allege how Becca's was involved. Because Plaintiff fails to allege that Becca's actually made a defamatory statement and the conduct underlying his claim relates to a separate party, Plaintiff fails to allege a colorable claim for defamation *per se* against Becca's. The Court thus dismisses Plaintiff's defamation *per se* claim with leave to amend.

### C.    *Supplemental jurisdiction for state law claim.*

Even if Plaintiff had properly alleged a claim for defamation, Plaintiff's defamation claim would still fail because the Court lacks subject matter jurisdiction to decide it. As outlined above,

---

[5] Plaintiff does not name Tuscan as a defendant in this action. So, the Court does not construe Plaintiff as bringing a defamation claim against Tuscan. But even it did, Plaintiff would not have alleged a colorable claim for defamation against Tuscan. While Plaintiff alleges that Tuscan falsely stated that Plaintiff assaulted another tenant—which would constitute defamation *per se* because it imputes that Plaintiff committed a crime—Plaintiff does not allege that Tuscan made an unprivileged publication of these statements. An unprivileged publication is an element of a claim for defamation. Plaintiff does not allege this element because, although he asserts that certain community members heard the false statements, he does not allege that they heard them from Tuscan.

1    defamation is a state law claim, not a federal claim.  So, the Court must have what is known as

2    either federal question jurisdiction or diversity jurisdiction to decide the state law claim.  The

3    Court has neither.  The Court takes this opportunity, however, to discuss jurisdiction.  Federal

4    courts—like this Court—must have jurisdiction to hear a case.  Generally speaking, there are two

5    types of jurisdiction a federal court may have over a civil case: (1) federal question jurisdiction;

6    and (2) diversity jurisdiction.  *See* 28 U.S.C. §§ 1331, 1332.

7         The first type of jurisdiction—federal question jurisdiction—exists when a civil action

8    arises "under the Constitution, laws, or treaties of the United States." [6]  *See* 28 U.S.C. § 1331.

9    This appears to be the type of jurisdiction that Plaintiff is invoking because he brings a Title II

10   claim arising under federal law and he cites to 28 U.S.C § 4101—defining defamation— in his

11   complaint.  (ECF No. 1-1).  However, as outlined above, Plaintiff did not notify the NERC which

12   establishes this Court's federal question jurisdiction.  Because Plaintiff has not alleged a viable

13   federal statute under which his claims arise, the Court cannot hear his claim unless Plaintiff

14   establishes a different basis for this Court's jurisdiction over his case or he alleges in an amended

15   complaint that he has notified the NERC.

16        The second type of jurisdiction is known as "diversity jurisdiction," and exists "where the

17   matter in controversy exceeds the sum or value of $75,000" and where the matter is between

18   "citizens of different states."  *See* 28 U.S.C. § 1332(a).  Plaintiff has not established diversity

19   jurisdiction because both Plaintiff and Becca's appears to citizens of Nevada.

20        Finally, the Court lacks supplemental jurisdiction over the remaining state law claim.

21   Courts have supplemental jurisdiction "over all other claims that are so related to claims in the

22   action within such original jurisdiction that they form part of the same case or controversy under

23   Article III of the United States Constitution."  28 U.S.C. § 1367(a); *Herman Family Revocable*

24

25   _____

     [6] Cases "arise under" federal law either when federal law creates the cause of action or where the
26   vindication of a right under state law necessarily turns on the construction of federal law.
     *Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1088-89 (9th Cir. 2002).  Whether
27   federal-question jurisdiction exists is based on the "well-pleaded complaint rule," which provides
     that "federal jurisdiction exists only when a federal question is presented on the face of the
28   plaintiff's properly pleaded complaint."  *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

*Trust v. Teddy Bear*, 254 F.3d 802, 805 (9th Cir. 2001) ("The statute's plain language makes clear that supplemental jurisdiction may only be invoked when the district court has a hook of original jurisdiction on which to hang it."). The Court does not have federal question or diversity jurisdiction here. However, the remaining claim of defamation *per se* is a state law claim. Because supplemental jurisdiction requires that the Court have federal question or diversity jurisdiction over at least one *other* claim, the Court may not exercise supplemental jurisdiction over Plaintiff's state law claim.

## <u>ORDER</u>

**IT IS THEREFORE ORDERED** that Plaintiff's application to proceed *in forma pauperis* (ECF No. 4) is **granted.** Plaintiff shall not be required to pre-pay the filing fee. Plaintiff is permitted to maintain this action to conclusion without the necessity of prepayment of any additional fees or costs or the giving of a security therefor. This order granting leave to proceed *in forma pauperis* shall not extend to the issuance and/or service of subpoenas at government expense.

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to file Plaintiff's complaint (ECF Nos. 1-1, 1-2, 1-3) on the docket but shall not issue summons.

///

///

///

1    **IT IS FURTHER ORDERED** that the complaint (ECF Nos. 1-1, 1-2, 1-3) is **dismissed**

2    **without prejudice** for failure to state a claim upon which relief can be granted, with leave to

3    amend.  Plaintiff will have until **August 26, 2024,** to file an amended complaint if the noted

4    deficiencies can be corrected.  If Plaintiff chooses to amend the complaint, Plaintiff is informed

5    that the Court cannot refer to a prior pleading (i.e., the original complaint) to make the amended

6    complaint complete.  This is because, generally, an amended complaint supersedes the original

7    complaint.  Local Rule 15-1(a) requires that an amended complaint be complete without reference

8    to any prior pleading.  Once a plaintiff files an amended complaint, the original complaint no

9    longer serves any function in the case.  Therefore, in an amended complaint, as in an original

10    complaint, each claim and the involvement of each Defendant must be sufficiently alleged.

11    **Failure to comply with this order will result in the recommended dismissal of this case.**

13    DATED: July 26, 2024

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE